IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CHRISTOPHER TAYLOR,
    Plaintiff,

vs.                                     Case No. 5:10cv294/RS/EMT

MICHAEL J. ASTRUE,
Commissioner of the
Social Security Administration,
    Defendant.
_____/

## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Local Rules 72.1(A), 72.2(D) and 72.3 of this court relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*. It is now before the court pursuant to section 405(g) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 401–34, and Supplemental Security Income ("SSI") benefits under Title XVI of the Act, 42 U.S.C. §§ 1381–83. Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

I.     PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on July 10, 2007, and in each application he alleged disability beginning November 27, 2006 (Tr. 16).[1] His applications were denied initially and on reconsideration (*id.*). On March 24, 2010, after a hearing, an administrative law judge ("ALJ")

---

[1] All references to "Tr." refer to the transcript of Social Security Administration record filed on January 21, 2011 (Doc. 6). Additionally, the page numbers refer to those found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the court's electronic docketing system.

issued a decision in which she found Plaintiff "not disabled" under the Act at any time through the date of her decision (Tr. 16–28).  The Appeals Council denied Plaintiff's request for review on September 22, 2010 (Tr. 1–5).  Thus, the ALJ's decision stands as the final decision of the Commissioner, subject to review in this court.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir. 2007); Falge v. Apfel, 150 F.3d 1320 (11th Cir. 1998).  This appeal followed.

II. FINDINGS OF THE ALJ

In her decision dated March 24, 2010, the ALJ made several findings relative to the issues raised in this appeal (Tr. 16–28):

1) Plaintiff meets the insured status requirements of the Act through March 31, 2012.[2]

2) Plaintiff has not engaged in substantial gainful activity since the date he alleges he became disabled.

3) Plaintiff has the following severe impairments: lumbar spine disorder, right ulnar neuropathy status post transposition surgery, hypertension, chronic pain, and depression.

4) Plaintiff has no impairment or combination of impairments that meets or medically equals a listed impairment.

5) Plaintiff has the residual functional capacity ("RFC") to perform sedentary work[3] or, more specifically, the following RFC:  he can lift/carry ten pounds occasionally and less than ten pounds frequently; he can stand/walk two hours in an eight-hour workday and sit six hours; he requires a sit/stand option; he is precluded from climbing ladders/ropes/scaffolds; he is limited to occasional ramp/stair climbing, stooping, kneeling, crouching, and crawling; he must avoid exposure to extreme heat, humidity, cold conditions, and dangerous work hazards, such as unprotected heights; and he is limited to routine, uncomplicated work tasks due to medication side effects.

6) Plaintiff cannot perform any of his past relevant work.

---

[2] Thus, since Plaintiff's date last insured is after the date of the ALJ's decision, the time frame relevant to this appeal is November 27, 2006 (alleged onset), through March 24, 2010 (date of the ALJ's decision).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567.

> 7) Transferability of job skills is not material to the determination of disability because use of the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills.
>
> 8) Considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy he can perform; Plaintiff, therefore, is not disabled.

III. STANDARD OF REVIEW

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also* Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Elam v. R.R. Ret. Bd., 921 F.2d 1210, 1214 (11th Cir. 1991). As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if in light of the record as a whole the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); Falge, 150 F.3d at 1322; Lewis, 125 F.3d at 1439; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995). Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)); Lewis, 125 F.3d at 1439. The court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)–(g),[4] the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, he is not disabled.

2. If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3. If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5. Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. MacGregor v. Bowen,

---

[4] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims (*see* 20 C.F.R. §§ 404, 416). Therefore, hereinafter, citations in this Report should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must then prove he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

IV.   PLAINTIFF'S PERSONAL, EMPLOYMENT, AND MEDICAL HISTORY

    A.   Personal History

Plaintiff was born on November 29, 1965, and was forty years old on the date he alleges he became disabled (Tr. 26). He has at least a high school education and is able to communicate in English (Tr. 27). His previous work experience includes work as a general laborer, where he hauled roofing materials and cleaned job sites; creeler for a carpet manufacturer; assembly line worker, where he handled light materials; and pallet loader, where he handled heavy materials (Tr. 20–21).

    B.   Relevant Medical History

Treatment Records That Precede November 27, 2006, the Alleged Onset Date

Plaintiff was a patient at Nathanael Medical Center (Tr. 323–33) and Dothan Therapy Associates (Tr. 317–22) shortly before his alleged onset date. The relevant Nathanael records reflect that Plaintiff presented on October 12, 2006, and stated he hurt his back lifting pallets at work (Tr. 326). X-rays taken the same day revealed a normal lumbar spine (Tr. 333). The Dothan records reflect that Plaintiff attended physical therapy sessions on October 20, 23, and 25, 2006, for lumbar strain and lower back pain (Tr. 317–22). Additionally, Plaintiff presented to an emergency room ("ER") in mid-October 2006, and complained of continuous back pain for the past two years (Tr. 463). He was assessed with sciatica[5] and musculoskeletal back pain (Tr. 464). On October 31, 2006, Plaintiff saw Mark Choquette, M.D., with Southern Bone and Joint Specialists ("SBJS"), and reported back pain since his work injury on October 12 (Tr. 448). Plaintiff stated he was "not really doing any better," although he noted physical therapy had helped (*id.*). A physical examination was essentially normal, with the exception of some pain in the area of the left sacral pelvic ilium (*see id.*). Dr. Choquette opined that Plaintiff could perform light duty work for one week, heavier duty work the following week, and full duty work the next week (Tr. 448–49). Plaintiff returned to the ER on November 7, 2006, with essentially the same complaints as before (*see* Tr. 461). His

---

[5] "Sciatica refers to pain, weakness, numbness, or tingling in the leg. It is caused by injury to or pressure on the sciatic nerve. Sciatica is a symptom of another medical problem, not a medical condition on its own." *See* http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001706 (last visited November 18, 2011).

diagnoses remained the same, and Plaintiff was advised to follow up with a back specialist (Tr. 462). Finally, on November 8, 2006, a physician with Marianna Medical Associates saw Plaintiff and diagnosed lumbosacral strain (*see* Tr. 340).

> Treatment Records That Follow the Alleged Onset Date

On December 4, 2006, a magnetic resonance imaging ("MRI") of Plaintiff's lumbar spine was obtained (Tr. 457). The MRI revealed marked degenerative disc disease ("DDD") at L4-L5 with bilateral neural foraminal narrowing, left greater than right, but otherwise was normal (*id.*). Plaintiff returned to the SBJS ten days later and saw James P. Maddox, M.D. (Tr. 447). Plaintiff complained of back pain with left buttock and leg pain (*id.*). Dr. Maddox recommended a trial of physical therapy geared toward lumbar stabilization, a foraminal epidural injection, and the use of Celebrex (*id.*). Plaintiff obtained the epidural steroid injection and returned to Dr. Maddox on January 8, 2007 (Tr. 446). Plaintiff reported no improvement and continued to complain of sciatica on the left (*id.*). Because Dr. Maddox was unsure of Plaintiff's specific work-related abilities, he referred Plaintiff for functional capacity evaluation ("FCE") (*id.*).

Plaintiff presented for the FCE on February 8, 2007, but the FCE was not completed because Plaintiff stated he could not finish due to pain (Tr. 451). The evaluator noted that Plaintiff stated he could not walk on his toes and heels, he closed his eyes during most activities, and he began shaking the static gauge before he was instructed to begin (*id.*). Plaintiff also demonstrated a high pain profile in his pre-FCE questionnaire and during the FCE (*id.*). The evaluator opined that Plaintiff's "subjective responses and behavior were out of proportion to his identified pathology and objective clinical findings" (Tr. 452).

Plaintiff returned to Dr. Maddox the following day (Tr. 445). Dr. Maddox opined that Plaintiff could not return to his past "unrestricted heavy manual labor" job but could perform work at sedentary to light levels of exertion if he alternated sitting, standing, and walking (*see id.*). Plaintiff underwent another epidural steroid injection on February 14, 2007, and returned to Dr. Maddox on April 9, 2007 (Tr. 430, 444). Plaintiff stated his pain had not improved, so Dr. Maddox recommended a discography, which was performed on April 23, 2007 (*see* Tr. 444, 458). On May 16, 2007, Plaintiff returned to Dr. Maddox to discuss the discography results (Tr. 443). As explained by Dr. Maddox, the discography showed an extension of the nucleus to the posterior

peripheral annulus, more to the left side (*id.*; *see also* Tr. 450 (discography results, reflecting mild annular degeneration at L4-L5 and L5-S1)). Although Dr. Maddox noted that Plaintiff had discogenic pain at the L4-L5 level, he recommended to Plaintiff that he try to return to work in a sedentary to light position and give his disc condition more time to heal (Tr. 443).

Plaintiff returned to the ER on July 11, 2007, and complained of pain in his left leg and back for the past year (Tr. 465). The ER physician assessed chronic back pain (Tr. 466). Plaintiff returned again on July 15, 2007, and complained of back pain for the past eight months (Tr. 467). Musculoskeletal and neurological examinations were normal, as was Plaintiff's gait and station; Plaintiff was assessed with back pain (Tr. 468).

On September 17, 2007, Plaintiff presented to the North Florida Sports Medicine Clinic and saw R. Spencer Stoetzel, M.D. (Tr. 517). Plaintiff reported low back pain with radicular symptoms in the left lower extremity (*id.*). A physical examination revealed 4/5 to 5/5 muscle strength in the lower extremities, with mildly decreased sensation over the left dorsal foot (*id.*). Dr. Stoetzel assessed DDD at L4-5, low back pain, and left lower extremity radiculitis (*id.*). After considering Plaintiff's report that all prior treatment modalities had been unsuccessful, Dr. Stoetzel recommended fusion surgery and noted he would ask Plaintiff's workers' compensation carrier to approve an MRI and the surgery (*see* Tr. 518).

On October 1, 2007, Plaintiff presented to Samuel Ward, M.D., for a consultative physical examination at the request of the Social Security Administration (Tr. 479). Plaintiff reported chronic pain in his legs and lower back (*id.*). Plaintiff's examination was essentially normal, with a few exceptions. For example, motor strength in the upper and lower extremities was full (i.e., 5/5), except in the left leg, which nearly full (i.e., 4/5) (*id.*). Additionally, sensation was grossly intact; reflexes were "2+ and symmetrical"; straight leg raising ("SLR"), sitting and supine, was within normal limits on the right but caused pain on the left at ten degrees; and ranges of motion were within normal limits except in the lumbar spine (Tr. 479–82). Dr. Ward noted that Plaintiff did not need an assistive device, although he walked with a limp due to pain, and Plaintiff could heel and toe walk on the right but not the left (Tr. 479). Dr. Ward diagnosed hypertension and sciatica (*id.*).

On October 16, 2007, Dr. Stoetzel performed a lumbar decompression and, at L4-L5, a laminectomy, posterior spinal fusion, transforaminal lumbar interbody fusion, and arthrodesis (Tr.

514).  Plaintiff returned to Dr. Stoetzel on October 31, 2007, and stated he was doing "great from back surgery" (Tr. 513).  He reported his leg pain had improved and his back was "quite stable," although he reported numbness in two fingers of the right hand (*id.*).  Dr. Stoetzel advised Plaintiff to continue "limited weight bearing on his back" (*id.*).  On November 29, 2007, Plaintiff saw Dr. Stoetzel and stated his back and leg pain were significantly better after the surgery, but he continued to experience some low back pain and left lower extremity radicular symptoms (Tr. 511).  Plaintiff also reported left thigh and calf paresthesias and continued numbness in his fingers (*id.*).  Dr. Stoetzel prescribed Lyrica for the neuritis and advised Plaintiff to return in six weeks (*id.*).  Plaintiff returned on January 10, 2008, with essentially the same complaints (*see* Tr. 510).  A physical examination revealed 4/5 to 5/5 motor strength in all groups in the lower extremities and ambulation without difficulty; Dr. Stoetzel advised Plaintiff to "continue light duty at work" (Tr. 510).  Due to Plaintiff's complaints of numbness, Dr. Stoetzel recommended an electromyography ("EMG") of the upper extremities, which Plaintiff obtained—along with nerve conduction studies—on March 4, 2008 (Tr. 510, 541, 547).  The testing revealed tardy ulnar palsy and very mild sub-clinical carpal tunnel syndrome on the right side, with no evidence of cervical radiculopathy (Tr. 541). On March 10, 2008, Plaintiff returned to Dr. Stoetzel who opined that the ulnar symptoms were likely from Plaintiff's hospitalization and not a result of surgery (Tr. 547).  When Plaintiff returned about one month later, Dr. Stoetzel noted that Plaintiff continued to report left lower extremity radicular type symptoms and right-sided neuropathy (Tr. 548).  As a result, Dr. Stoetzel recommended a computerized tomography ("CT") myelogram to determine whether any nerve root compression was present (although Dr. Stoetzel was "99%" sure no compression would be found) (Tr. 547–48).

On June 5, 2008, Plaintiff underwent a lumbar myelogram and post-myelogram CT of the lumbar spine (Tr. 565).  The impression was "posterior fusion at L4-5 with decompressive laminectomies, [with] no residual recurrent disc herniation or visible nerve root compression" (*id.*).  Plaintiff returned to Dr. Stoetzel on June 12, 2008, with complaints of low back, left leg, and right hand pain (Tr. 564).  Dr. Stoetzel recommended ulnar release of Plaintiff's right arm as well as further, non-operative treatment for his low back, noting that the CT myelogram revealed no evidence of nerve root impingement (*id.*).  On July 17, 2008, Dr. Stoetzel noted that Plaintiff complained of swelling in ankles, but the swelling was "not perceptible" (Tr. 563).  Dr. Stoetzel

placed Plaintiff at maximum medical improvement ("MMI") as to his back, with the following disability ratings: 9% (total), 7% (for the operative disc level), and 1% (for each of the fusion levels) (*id.*). He noted Plaintiff had a "good decompression" that was "going on to a solid fusion," and he "put [Plaintiff] at permanent light duty type work" with no lifting more than fifteen pounds, standing more than forty-five minutes, or walking more than 350 feet (*id.*). And on August 14, 2008, Plaintiff returned to Dr. Stoetzel and reported continued, right ulnar neuropathy (Tr. 562). Although Dr. Stoetzel had recommended cubital tunnel release and ulnar nerve transposition, the workers' compensation carrier had not approved the procedure (*id.*). Noting that Plaintiff's lumbar fusion looked stable, Dr. Stoetzel essentially stated there was nothing further he could do for Plaintiff other than referring him to pain management (*see id.*; *see also* Tr. 589).[6]

On January 14, 2009, upon referral from Dr. Stoetzel Plaintiff presented to John Marsella, M.D., for a pain management evaluation (*see* Tr. 577). Plaintiff reported constant pain in the left lumbar region, and hip, as well as left foot numbness and numbness in the right hand, wrist, and ring finger and small finger (Tr. 577–78). Dr. Marsella assessed post-laminectomy syndrome in the lumbar region and lesion of ulnar nerve (Tr. 581). He recommended that Plaintiff continue on "medical management without change" (i.e., hydrocodone/acetaminophen) through Dr. Stoetzel (*see* Tr. 577, 581). Plaintiff returned to Dr. Marsella in April 2009 and underwent a selective nerve root block at L5-S1; the hydrocodone/acetaminophen was discontinued (*see* Tr. 623–24). In May 2009 Dr. Marsella stated that Plaintiff's Minnesota Multiphasic Personality Inventory ("MMPI") test results reflected a "type p" personality, that is, one apt to show resistance to treatment and/or one with the worst and greatest number of symptoms with the least likelihood of improvement (Tr. 611, 652). A physical examination revealed a normal gait and 4/5 strength, normal tone, and normal bulk in the left lower extremity, with no atrophy (Tr. 610–11). Plaintiff saw Dr. Marsella through December of 2009. Plaintiff essentially continued to report pain with no improvement, and Dr. Marsella responded by prescribing a TENS unit and additional medication such as Percocet, Methadone, Cymbalta and/or Lunesta. In December 2009, Dr. Marsella recommended physical and

---

[6] On December 10, 2008, Dr. Stoetzel completed a Clinical Assessment of Pain form and a Physical Capacities Evaluation (Tr. 571–72), which will be discussed more fully, *infra*.

psychological therapy (Tr. 653).[7]

Plaintiff returned to Dr. Stoetzel in mid-2009 for follow-up regarding his right cubital tunnel syndrome (Tr. 629). Plaintiff reported persistent symptoms and that "nothing ha[d] changed" (*id.*). The surgery previously recommended by Dr. Stoetzel still had not been authorized, so he agreed to submit another request to the workers' compensation carrier (*id.*). Shortly thereafter Plaintiff underwent a right ulnar nerve transposition, submuscular, and decompression for his right cubital syndrome (Tr. 627). Plaintiff returned to Dr. Stoetzel for follow-up on July 13, 2009 (Tr. 626). Plaintiff stated he was "doing well," although some paresthesias remained in the right hand (Tr. 627). Dr. Stoetzel recommended that Plaintiff participate in physical/occupational therapy, and he released Plaintiff to "modified" work duty, with no lifting with the right hand (Tr. 626).

  C. Other Information Within Plaintiff's Claim File

On October 18, 2007, and April 28, 2008, non-examining agency physicians completed Physical RFC Assessments (Tr. 497–504). In nearly identical assessments, the physicians generally opined that Plaintiff is capable of performing light work (*id.*; *see also* 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.")).[8] The first physician based her opinions in large part on the results of Dr. Ward's consultative examination, which occurred prior to Plaintiff's fusion surgery (*see* Tr. 498). The second physician based his opinions on a more comprehensive record, which included Plaintiff's post-surgery records (*see, e.g.*, Tr. 550). He also noted that Plaintiff did not appear entirely credible because his reported symptoms and limitations were inconsistent with the objective medical evidence (Tr. 554).

V. DISCUSSION

---

[7] The ALJ's opinion contains a more detailed summary of Dr. Marsella's treatment records (*see* Tr. 24–25), which need not be repeated here.

[8] The main difference between the two opinions is that the second physician imposed "occasional" postural limitations, and the first imposed no such restrictions (*see* Tr. 551, 499).

Case No. 5:10cv294/RS/EMT

Plaintiff raises two issues in this appeal, which the undersigned addresses in the following order. First, Plaintiff contends the ALJ erred in evaluating his credibility (Doc. 10 at 12, 18–21). Second, Plaintiff contends the ALJ erred by failing to assign proper weight to the opinions of Dr. Stoetzel (*id.* at 12–18).

A. Evaluation of Plaintiff's Subjective Complaints

Pain and other subjective complaints are treated by the Regulations as symptoms of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." The Eleventh Circuit has articulated a three-part pain standard, sometimes referred to as the Hand test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

Hand v. Heckler, 761 F.2d 1545, 1548 (11th Cir. 1986) (originally adopting the three-part pain standard). The Eleventh Circuit continues to follow the Hand test. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Ogranaja v. Commissioner of Social Security, 186 Fed. Appx. 848, 2006 WL 1526062, at *3 (11th Cir. June 5, 2006) (quoting Wilson); Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).

Underlying the Hand standard is the need for a credibility determination concerning a plaintiff's complaints. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain [or other symptom]." Scharlow v. Schweiker, 655 F.2d 645, 649 (5th Cir. Sept. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[9] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could

---

[9] Decisions of the United States Court of Appeals for the Fifth Circuit decided on or before September 30, 1981 are binding precedent in the Eleventh Circuit. Bonner v. Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

reasonably be expected to produce [the claimed symptom]. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." Hand, 761 F.2d at 1548–49. It is within the ALJ's "realm of judging" to determine whether "the quantum of [symptoms a claimant] allege[s] [is] credible when considered in the light of other evidence." Arnold v. Heckler, 732 F.2d 881, 884 (11th Cir. 1984). The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Here, in discussing Plaintiff's credibility the ALJ noted that "whenever . . . [subjective complaints] are not substantiated by objective medical evidence, [she] must make a finding on the credibility of the [subjective complaints] based on a consideration of the entire case record" (Tr. 20) (emphasis added). The ALJ then summarized Plaintiff's testimony and, immediately thereafter, summarized the medical evidence in Plaintiff's file (*see* Tr. 21–25). The ALJ ultimately concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the . . . [RFC]"[10] (Tr. 20–21) (emphasis added).

Plaintiff contends the ALJ failed to follow the Hand test and/or regulations because she provided no basis for her rejection of Plaintiff's complaints (Doc. 10 at 21). The undersigned concludes, however, that although the ALJ did not systematically organize her discussion of Plaintiff's credibility in a factor by factor fashion, or include it in a separate section of her decision, her evaluation of Plaintiff's subjective complaints complied with the law and regulations. Initially, the ALJ articulated the pain standard in her decision (*see* Tr. 20). She also specifically referenced 20 C.F.R. § 404.1529 (*id.*). See Wilson, 284 F.3d at 1226 (approving an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard"). And, while the ALJ could have better articulated her findings,

---

[10] Thus, ALJ did not discredit all of Plaintiff's complaints; rather, she found incredible only those complaints that would render Plaintiff incapable of performing sedentary work.

Case No. 5:10cv294/RS/EMT

when her decision is read as a whole the reasons for discounting the most extreme of Plaintiff's complaints are evident (*see* Tr. 20–26).[11]

In discussing the medical evidence the ALJ noted that in February 2007, Plaintiff demonstrated a high pain profile during the FCE and in his pre-FCE questionnaire, and the evaluator noted that Plaintiff's subjective responses and behavior were out of proportion to the identified pathology and objective clinical findings (Tr. 22). Also in February 2007, Dr. Maddox opined that Plaintiff could work in a sedentary to light job that would allow him to sit, stand, and walk at intervals (*id.*). And in May 2007, following the discography, Dr. Maddox again opined that Plaintiff should return to work at sedentary to light levels of exertion (*id.*). Continuing, the ALJ noted that ER records from July 2007 show that Plaintiff had a normal gait, station, and neurological examination (*id.*). Likewise, Dr. Stoetzel's September 2007 examination yielded essentially normal results, as did Dr. Ward's consultative examination in October 2007 (as noted by the agency physician on the first RFC assessment) (Tr. 22–23).[12]

The ALJ then discussed Plaintiff's fusion surgery and noted that Plaintiff significantly improved following the surgery, although he continued to complain of pain (Tr. 23). However, despite Plaintiff complaints of pain a CT scan revealed he had no nerve root impingement or compression (Tr. 23, 564). Additionally, in July 2008 Plaintiff reported swelling in his ankles, but no swelling was visible to Dr. Stoetzel (Tr. 24). On the same day Dr. Stoetzel placed Plaintiff at MMI, with a total disability rating of only 9%, and he released Plaintiff to light duty work (Tr. 24). And in December 2008, Dr. Stoetzel completed a physical capacities evaluation and rendered opinions that are generally consistent with an ability to perform sedentary work (these opinions are discussed more fully, *infra*).

The ALJ also noted that a consultative psychologist, who examined Plaintiff on March 11, 2009, found, based on psychiatric testing, that Plaintiff's personality characteristics would lead to

---

[11] Although the undersigned has concluded that the ALJ's credibility findings are sufficient, the court does not endorse the manner in which she made her findings. *See* Cross v. Comm'r. of Social Security, 373 F. Supp. 2d 724, 728 (N.D. Ohio 2005) (affirming the decision of the Commissioner, but noting that the ALJ's articulation "leaves much to be desired").

[12] While not specifically noted by the ALJ, the record also reflects that Plaintiff's examination by Dr. Choquette was essentially normal, and Dr. Choquette opined that Plaintiff could return to light duty work within approximately one month of his work-related injury and to full duty work within approximately two months (*see* Tr. 448–49).

Case No. 5:10cv294/RS/EMT

his describing multiple and magnified symptoms, with a strong tendency toward manipulative and opportunistic behavior (Tr. 25, 597–98).  Moreover, Plaintiff's activities of daily living were inconsistent with his alleged disabling exertional limitations (Tr. 26).  For example, the record shows—as the ALJ found—that Plaintiff admitted to Dr. Marsella that he could perform activities of daily living (Tr. 25, 609, 619).  Additionally, the record reveals that Plaintiff cared for his seven-month-old child alone on some days and with the assistance of his sister-in-law on other days, picked up the child (who weighed about eighteen pounds), drove on a daily basis, took his two daughters to school and picked them up from school, occasionally cooked and folded clothes, and attended church regularly (Tr. 19, 40–41, 54–57, 473–74).  And finally, the ALJ noted that the opinions of the second non-examining agency physician are inconsistent with Plaintiff's allegations, because the physician—who considered a comprehensive record—opined that Plaintiff could perform <u>light</u> work (which, of course, requires greater physical capacities than sedentary work) (Tr. 26 (referencing Tr. 549–56)).

The undersigned is not charged with making independent fact conclusions, but only with reviewing the substantiality of the evidence underlying the conclusions reached by the ALJ.  *See* <u>Moore v. Barnhart</u>, 405 F.3d 1208, 1211 (11th Cir. 2005).  Having done so, the undersigned concludes that the ALJ's reasons for discrediting Plaintiff's subjective complaints—to the extent those complaints are inconsistent with an ability to perform <u>sedentary</u> work—are substantially supported by the record.  Moreover, the reasons for discrediting Plaintiff's complaints were properly considered.  *See, e.g.*, <u>Majkut v. Comm'r of Soc. Security</u>, 394 Fed. Appx. 660 (11th Cir. 2010) (affirming ALJ's credibility findings where ALJ relied, in part, on a physician's notation that the claimant "might be embellishing symptoms"); 20 C.F.R. § 404.1529 (absence of an objective medical basis to support the degree of severity of subjective complaints is an important factor to consider in evaluating the credibility of testimony and complaints); <u>Macia v. Bowen</u>, 829 F.2d 1009, 1012 (11th Cir. 1987) (ALJ may consider such daily activities when evaluating subjective complaints of disabling pain and other symptoms).  Accordingly, Plaintiff is not entitled to relief.

B.      Dr. Stoetzel's Opinions

As previously noted, on December 10, 2008, Dr. Stoetzel completed a Clinical Assessment of Pain form ("CAP") and a Physical Capacities Evaluation ("PCE") (Tr. 571–72). On the CAP he opined that Plaintiff's pain was present to such an extent as to be distracting to adequate performance of daily activities or work (Tr. 571). He also opined that physical activity, such as walking, standing, sitting, bending, stooping or moving extremities, would cause some increase in pain, but not to such an extent as to prevent adequate functioning in such tasks (*id.*). He further opined that the side effects of Plaintiff's medication would affect his ability to work by causing some limitations, but not to such a degree as to create serious problems in most instances (*id.*). Next, on the PCE Dr. Stoetzel opined that Plaintiff could lift or carry up to ten pounds occasionally and five pounds frequently, sit eight hours, and stand or walk one hour in an eight-hour workday (Tr. 572). He also opined Plaintiff could rarely climb stairs or ladders, balance, bend, stoop, and work around hazardous machinery; occasionally reach, operate a motor vehicle, and perform fine manipulation (i.e., finger dexterity); and frequently push, perform gross manipulation (i.e., grasp, twist, and handle), and work around environmental problems such as dust or allergens (*id.*). Finally, Dr. Stoetzel opined that Plaintiff would miss four days of work per month and explained that Plaintiff was status post lumbar fusion and "ha[d] persistent cubital tunnel syndrome" (*id.*). The ALJ acknowledged the foregoing opinions and did not entirely discount them; rather, she concluded that the opinions "should be given some weight" because the record supports some of the limitations (Tr. 25). More specifically, the ALJ credited those opinions that are consistent with an ability to perform sedentary work without excessive absenteeism (*see* Tr. 25–26).

As this court is well aware, substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. *See* Lewis v. Callahan, 125 F.3d 1436, 1439–41 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Sabo v. Chater, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips v. Barnhart, 357 F.3d 1232, 1240–41 (11th Cir. 2004) (citation omitted). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly

conclusory.  *See* Edwards, 937 F.2d at 580 (finding that the ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See* Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also* Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).  Generally, a treating physician's opinion is entitled to more weight than a consulting physician's opinion.  *See* Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527 (d)(2).

Initially, the ALJ included most of Dr. Stoetzel's opinions in Plaintiff's RFC, and the few opinions she excluded (with one exception) are not substantially different from those she included. For example, the lifting and carrying restrictions in the RFC and in Dr. Stoetzel's opinions are identical; the sitting, standing, and walking restrictions are nearly identical (the RFC permits six hours of sitting a day and two hours of standing or walking, in a job with a sit/stand option, while Dr. Stoetzel's opinions permit eight hours of sitting and one hour or standing or walking); and the climbing restrictions are similar (the RFC precludes climbing ladders, ropes and scaffolds and permits occasional climbing of ramps or stairs, while Dr. Stoetzel's opinions limit climbing of stairs and ladders to "rarely" and offers no opinion as to ropes or scaffolds) (*compare* Tr. 12 *with* Tr. 572). Thus, the opinions of Dr. Stoetzel that appear to be at issue here are:  (1) his opinion that Plaintiff would be expected to miss four days of work per month (such absenteeism would preclude all work according to the vocational expert ("VE") (*see* Tr. 67)), and (2) his opinion that pain would be

present to such an extent as to be distracting to adequate performance of Plaintiff's daily activities or work.[13]

In discounting Dr. Stoetzel's opinions, the ALJ stated that the opinions were offered with "little explanation, rationale, clinical findings, or reference to objective testing" (Tr. 25–26). The ALJ also stated that the opinions appear largely based on Plaintiff's subjective complaints (*id.*).

The ALJ's statements and related findings are fully supported by the record. First, as previously noted, Dr. Stoetzel offered only the following explanation/rationale for his opinions: Plaintiff was status post lumbar fusion and had persistent cubital tunnel syndrome. Although the explanation is factually correct, it does not provide a basis for the opinions. And, as the ALJ found, the explantion does not refer to any clinical findings, objective tests, or even Dr. Stoetzel's own treatment records.

Moreover, Dr. Stoetzel's treatment records do not support the opinions. For example, Dr. Stoetzel rendered the opinions at issue here on December 10, 2008, but prior to that date his physical examinations of Plaintiff were largely normal (e.g., they revealed good strength in the lower extremities and ambulation without difficulty). His treatment records also reflect that Plaintiff's fusion surgery in mid-October 2007 was objectively successful (i.e., a CT scan revealed "good decompression" and a "solid fusion"). And by the end of October 2007, Plaintiff's pain had improved, his back was "quite stable," and Dr. Stoetzel authorized limited weight bearing. Additionally, in January 2008 Dr. Stoetzel recommended continued light duty work, and in July 2008 he recommended permanent light duty work. Stated simply, his treatment records offer no support for the opinion that Plaintiff's condition would cause him to miss four days of work per month, suffer distracting pain, or otherwise be incapable of performing work.

---

[13] Plaintiff does not identify the opinions at issue in this claim for relief, but it is evident he challenges the ALJ's rejection of Dr. Stoetzel's absenteeism opinion (*see* Doc. 10 at 11 (referencing Tr. 67)). In the same discussion, however, Plaintiff points to testimony of the VE that an "[individual who] would be unable to sustain concentration for two hour periods due to the exacerbation of pain, and the side effect from medications" would be unemployable (*id.*). Dr. Stoetzel did not describe Plaintiff's pain or medication side effects in this manner. As previously discussed, on the CAP Dr. Stoetzel opined that side effects were <u>unlikely</u> to cause serious problems. He also opined that pain would be present to such an extent as to be distracting to adequate performance of daily activities or work. Nevertheless, the undersigned construes Plaintiff's argument as stating that the ALJ rejected the latter opinion of Dr. Stoetzel (i.e., Plaintiff's pain is "distracting") and, further, that Plaintiff challenges the rejection.

Likewise, because the opinions lack an explanation or reference to clinical findings, testing, or treatment records, Dr. Stoetzel must have based his opinions on Plaintiff's subjective complaints, as the ALJ found. Because the ALJ properly determined that Plaintiff was less than fully credible, however, she—correspondingly—properly determined that the most extreme of Dr. Stoetzel's opinions were not credible to the extent they were based on Plaintiff's subjective complaints. Thus, the ALJ did not err in discounting a very limited number of Dr. Stoetzel's opinions. The reasons she stated for doing do are supported by substantial record evidence, and Plaintiff is not entitled to reversal on this ground.

For the foregoing reasons, the Commissioner's decision is supported by substantial evidence and should not be disturbed. 42 U.S.C. § 405(g); Lewis, 125 F. 3d at 1439; Foote, 67 F.3d at1560. Furthermore, Plaintiff has failed to show that the ALJ applied improper legal standards, erred in making his findings, or that any other ground for reversal exists.

Accordingly, it is respectfully **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**, that this action be **DISMISSED,** and that the clerk be directed to close the file.

At Pensacola, Florida this 23rd day of November 2011.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**